BEFORE THE UNITED STATES JUDICIAL PANEL
ON MULTIDISTRICT LITIGATION

| | | |
|---|---|---|
| In re: Medications With Abuse Potential Prisoner Litigation | ) ) | MDL No. 23-P-26 |

**PLAINTIFFS' BRIEF IN SUPPORT OF THEIR MOTION FOR TRANSFER OF ACTIONS PURSUANT TO 28 U.S.C. 1407 FOR COORDINATED OR CONSOLIDATED PRETRIAL PROCEEDINGS**

Pursuant to 28 U.S.C. § 1407 and Rule 6.2 of the Rules of Procedure of the Judicial Panel on Multidistrict Litigation, Plaintiffs Robert Daniels, Todd Briglin, Daniel Herman, Richard Vasquez, Khalaire Allah, Steven Jacks, John Alston, Joseph Perez, Roderick Reyes, Brian Bernard, Kevin Crichlow, Wilbert Dunbar, Robert Feder, Elvio Feola, John Frateschi, Bryan Hale, Mali Wilkerson, Christopher VanGuilder, Kiaza Locenitt, Donald Madison, Benjamin Marcial, McKinley Miller, Gary Ortiz, Claudio Johnson, Richard Rivera, Alonzo Jacobs, Robert Oleman, Derrick Williams, Marcos Rivera, John Rosado, Peter Allen, Mark Daniels, Shannon Dickinson, Aaron Dockery, John Gradia, Angel Hernandez, Hugh Knight, Terry Mathis, Sean Pritchett, Rashid Rahman, Felipe Rivera-Cruz, Wayne Stewart, John Pine, Ronald Diggs, Kenneth Windley, Michael Lorandos, Jose Burgos, Jeffrey First, Hannah Jones, George Pivetz, and Larry Rau ("Movants") respectfully submit this Memorandum of Law in support of their Motion for Transfer of Actions Pursuant to 28 U.S.C. § 1407 for Coordinated or Consolidated Pretrial Proceedings.

I.     BACKGROUND

Movants seek transfer of all pending Actions against medical providers formerly or currently in the employment of the New York State Department of Corrections and Community Supervision ("DOCCS") for Eighth Amendment violations related to discontinuations or denials

of Medications With Abuse Potential ("MWAP").  In 2019, eighteen (18) prisoner plaintiffs filed a putative class action in the Southern District of New York before the Honorable Loretta A. Preska, alleging Eighth Amendment violations by DOCCS' medical providers who either discontinued or denied prisoner patients treatment with certain medications deemed to have abuse potential.  *Peter Allen, et al., on behalf of themselves and others similarly situated vs. Carl Koenigsmann, et al.,* 19-cv-8173(LAP)(NS) ("*Allen I*"). Plaintiffs alleged these discontinuations and denials occurred regardless of the efficacy of the medication or the individualized medical needs of any given patient.  Plaintiffs moved for certification of an injunctive class as well as a liability class in 2022, and for preliminary injunctions.  On March 31, 2023, the district court certified the injunctive class and denied certification to the damages class.  *Allen v. Koenigsmann*, 19-cv-8173(LAP), 2023 U.S. Dist. LEXIS 57051 (Mar. 31, 2023).  On the same day, the district court granted the Plaintiff Class's Motion for Injunctive Relief.  *Allen v. Koenigsmann*, 19-cv-8173(LAP), 2023 U.S. Dist. LEXIS 57091 (Mar. 31, 2023). Eventually, claims for damages for fourteen of the original plaintiffs were severed from the injunctive class's claims into fourteen separate damages suits.  Since then, thirty-nine prisoners have filed individual damages suits in three separate Second Circuit district courts: thirty-one more in the Southern District of New York, four in the Northern District of New York, and four in the Western District of New York.

    The cases in the Southern District of New York have all been related by Local Rule to the Honorable Loretta A. Preska who presides over *Allen I*.  The cases in the Northern District of New York have all been related by Local Rule to the first-filed case before Honorable Brenda K. Sannes.  The cases in the Western District of New York have all been related to the first-filed case by Local Rule to the Honorable Elizabeth A. Wolford.  While discovery ends on the

fourteen original severed cases on September 15, 2023, dispositive motions will not be filed until October 31, 2023. Discovery has not commenced in the remaining thirty-nine cases – many are still being joined. Plaintiffs' counsel, who also serves as class counsel for the *Allen I* injunctive class, anticipates that, in the least, a few hundred more individual plaintiff damages cases will be filed by her office and other civil rights attorneys.

All Actions involve common questions about the liability of DOCCS' providers for following unconstitutional policies and practices that discontinued effective medical treatment without individualized assessments of patient need. All actions will also involve common affirmative defenses, including qualified immunity, statute of limitations defenses, and administrative exhaustion under the Prison Litigation Reform Act, 42 U.S.C. § 1997e ("PLRA"). Many rulings on the affirmative defenses will apply across most, if not all, cases and defendants.

**II.    LEGAL STANDARD**

Transfer is appropriate when actions pending in different judicial districts involve similar questions of fact such that coordinating or consolidating pretrial proceedings would "promote the just and efficient conduct of such actions." 28 U.S.C. § 1407. In relevant part, Section 1407 provides as follows:

> When civil actions involving one or more common questions of fact are pending in different districts, such actions may be transferred to any district for coordinated or consolidated pretrial proceedings. Such transfers shall be made by the judicial panel on multidistrict litigation authorized by this section upon its determination that transfers for such proceedings will be for the convenience of the parties and witnesses and will promote the just and efficient conduct of such cases.

*Ibid; see also In re Nifedipin*, 266 F. Supp. 2d 1382, 1382 (J.P.M.L. 2003).

### III. ARGUMENT

The Actions, and the many tag-along actions that will follow, are appropriate for Section 1407 transfer because they involve common issues and transfer will benefit the parties, witnesses, and courts. Further, given the number of cases already pending in the Southern District of New York, the amount of shared discovery already conducted, as well as Judge Preska's familiarity with the issues after four years of *Allen I* litigation, transfer to that district and court is most appropriate.

#### A. Transfer and Consolidation or Coordination Is Appropriate Under 28 U.S.C. § 1407

Multidistrict litigation "eliminates the potential for conflicting contemporaneous pretrial rulings by coordinate district and appellate courts in multidistrict related civil actions." *In re Plumbing Fixture Cases*, 298 F. Supp. 484, 491-492 (J.P.M.L. 1968). Multidistrict litigation thus avoids "duplicative discovery; prevents inconsistent pretrial rulings; and conserve[s] the resources of the parties, their counsel and the judiciary." *In re Ethicon Phusiomesh Flexible Composite Hernia Mesh Products Liability Litigation*, 254 F. Supp. 3d 1381, 1382 (J.P.M.L. June 2, 2017).

Pursuant to 28 U.S.C. § 1407, transfer of actions to one district for coordinated or consolidated proceedings is appropriate where: (1) actions pending in different districts involve one or more common questions of fact, and (2) the transfer of such actions will be for the convenience of the parties and witnesses and will promote the just and efficient conduct of such actions. 28 U.S.C. § 1407(a). Consolidation is especially important in multidistrict litigations where "the potential for conflicting, disorderly, [or] chaotic" action is greatest. *In re Plumbing Fixture*, 298 F. Supp. at 493. Here, these factors weigh heavily in favor of transfer and consolidation.

**1. The Actions Involve Common Factual Issues and Should be Consolidated**

At least fifty-three cases are pending to date all alleging that there were unconstitutional policies, customs and practices followed by DOCCS' medical defendants which resulted in Eighth Amendment violations. Though each individual damages suit does not share a strict identity of parties, there are multiple common questions of fact. *In re Japanese Elec. Prods. Antitrust Litig.*, 388 F. Supp. 565, 567 (J.P.M.L. 1975)(transfer of multidistrict cases is not dependent on strict identity of parties or issues, but on common issues of fact).

Fundamentally, each of the complaints allege:

- Around 2015, DOCCS Regional Medical Directors ("RMD"), the four lead medical administrators, started instituting and adopting policies and practices to discontinue and deny certain medications with abuse potential from patients in DOCCS' prisons;

- In 2017, these informal policies and practices were solidified and promulgated in a DOCCS-wide policy, "Medications with Abuse Potential," which demanded that a medical provider submit a request to prescribe MWAP medications to RMDs rather than making prescribing decisions him/herself based on medical judgment;

- After formal promulgation of the MWAP Policy, regardless of the appropriateness of the request, RMDs denied requests for prescription in an almost wholesale fashion despite the fact that the RMD had no personal knowledge of the patient and his/her medical needs;

- Even when outside specialists – like pain management doctors, neurologists, endocrinologists, cardiologists and oncologists -- recommended treatment with MWAP medications, Defendant providers and RMDs ignored the recommendations

without real medical justification contrary to existing DOCCS' policies and the standard of care;

- Defendant providers then sometimes attempted to treat patients with inappropriate psychotropic pharmaceutical alternatives that lacked efficacy and caused intolerable side effects, or they discontinued pharmaceutical treatment all together;

- Patients with symptoms and diagnoses as varied as diabetic neuropathy, sickle cell anemia, multiple sclerosis, late-stage cancers, radiculopathies, and other chronic pain were discontinued from their effective treatment and left to suffer.

The near identity of allegations means that any court tasked with resolving one of these lawsuits will face the same basic legal and factual issues. Indeed, each of the cases filed to date turn on five basic questions, the same questions necessarily raised by any potential complaint alleging that a prisoner in New York state custody was denied effective pharmaceutical treatment pursuant to the MWAP Policy: (1) whether the challenged polices and customs were unconstitutional; (2) whether the discontinuation or denial was due to the unconstitutional customs and policies adopted by DOCCS' defendants; (3) whether any given plaintiff prisoner received an appropriate assessment of his/her individualized medical needs before the medication was discontinued or denied; (4) whether defendants were aware discontinuations would result in patient suffering; and (5) whether a patient was effectively treated after the discontinuation or denial. While one is legal and four is a mix of law and fact, the rest are factual determinations. Although the Actions may allege avariety of injuries, causation (in the form of which medications were discontinued or denied), timing, severity and duration of each patient's injuries, consolidation is still proper. *See, e.g., In re Nat'l Prescription Opiate Litig.*, MDL No. 2804, 2020 U.S. Dist. LEXIS 253109, *1 (J.P.M.L. Mar. 30, 2020)("Despite some

variances among the actions before us, all share a factual common core with the MDL actions: the manufacturer and distributor defendants' alleged knowledge of and conduct regarding the diversion of these opiates . . . "); *In re: Cook Medical, Inc., IVC Filters Mktg., Sales Practices & Prods. Liab. Litig.*, 53 F. Supp. 3d 1379, 1381 (J.P.M.L. 2014)("The Panel has rejected the argument that products liability actions much allege identical injuries to warrant centralization"); *In re: Wright Med. Tech., Inc., Conserve Hip Implant Prods. Liab. Litig.*, 844 F. Supp. 2d 1371, 1372 (J.P.M.L. 2012) ("[A]lmost all injury litigation involves questions of causation that are case- and plaintiff-specific. Such differences have not been an impediment to centralization in the past.").

Furthermore, the same types of evidence will be used case-to-case-to-case. Most, if not all, individual damages suits will rely on a good deal of the evidence already amassed in *Allen I* showing the development and implementation of the MWAP Policy, including, but not limited to: DOCCS' administrative memos, DOCCS' internal audits on the ever-decreasing number of prescriptions in any given facility, DOCCS' internal emails between the architects of the policies, the 10,000 plus extant MWAP request forms which show an undeniable trend of denials and discontinuations, and patient medical records. Each and every individual liability case will necessarily rely on universal proofs in addition to two plaintiff-specific forms of evidence: the patient's individual medical records and internal electronic mail communications regarding the patient.

This particular suite of cases is also apt for transfer and consolidation given the state-wide nature of most individual plaintiff cases. DOCCS transferred many of the prisoner/patients between several of its 44 facilities through the course of his/her detention. DOCCS bounced plaintiffs between facilities and defendants across the State. As the pleadings show, any given

plaintiff can have meritorious claims against defendants in several districts due to prison to prison transfers -- as the Policy was state-wide so were the injuries in many instances. To date, the location of two defendant RMDs in the Southern District of New York has commanded venue of the great bulk of the heretofore filed Actions in the Southern District of New York and demanded they be related to *Allen I* before Judge Preska.

**2. Transfer will serve the convenience of the parties and witnesses and will promote the just and efficient conduct of the actions.**

According to the Manual for Complex Litigation, the following four factors govern whether transfer will facilitate the convenience of the parties and promote the just and efficient conduct of the transferred cases:

1. The elimination of duplicative discovery;

2. The avoidance of conflicting rules and schedules;

3. The reduction of litigation cost; and

4. The conservation of the time and effort of the parties, attorneys, witnesses, and courts.

Manual for Complex Litigation (Fourth), § 20.131, at 219.

With fifty-two actions in three different districts – and with those numbers about to materially increase – the size of the litigation weighs in favor of transfer. Indeed, without transfer, this litigation, which addresses the allegedly unconstitutional actions of numerous medical providers across 44 DOCCS' prisons under the umbrella of one main policy, would create the needless and unnecessary expense of overlapping discovery and judicial inefficiency. Further, the three federal district courts could make duplicative rulings on the same issues, which

could result in contradictory findings on significant pretrial disputes. Litigation of this scope and importance should not be beset with inconsistencies and inefficiencies.

### a. Transfer Will Eliminate Duplicative Discovery.

Because each action is based upon similar facts, plaintiffs in each of the Actions are, in turn, likely to seek overlapping discovery. *See In re Auto Body Shop*, 37 F. Supp. 3d 1388 (J.P.M.L. 2014). As mentioned above, a great deal of discovery has already been exchanged in *Allen I*, along with various rulings on the admissibility, preclusion, and relevancy of what will be universal discovery. The great bulk of the discovery comes from DOCCS' facilities and, as such, it would be New York State Assistant Attorney Generals who would be undertaking duplicative discovery case to case and in different districts.[1] In fact, gathering the medical records of over 400 arguably injured plaintiffs from the different DOCCS' facilities where they are currently housed has already been ably undertaken by the Office of the Attorney General located in Manhattan. Shifting that burden between Attorney General offices in three districts would only mean duplicative productions in the separate Actions. The same is true for DOCCS' ESI which is already coordinated through the Office of the Attorney General in Manhattan. In fact, Judge Preska has already mentioned to the parties the possibility of appointing a special master in the Southern District of New York to preside over discovery. Given the similarity of the Actions and the potential for duplicative discovery, transfer would inevitably conserve the parties' resources. *See, e.g. In re Air Crash at Dallas/Fort Worth Airport*, 623 F. Supp. 634, 635 (J.P.M.L. 1985).

---

[1] Though many DOCCS' providers have been certified for outside counsel due to conflicts with DOCCS' Administrative defendants, the certified outside counsel does not have access to DOCCS' records. Discovery from DOCCS' records is necessarily funneled through the Office of the New York State Attorney General in these actions.

b.  **Transfer Will Avoid Conflicting Rules and Schedules**

The Panel considers the possibility of inconsistent rulings on pretrial issues because of the possible *res judicata* or collateral estoppel effects on other cases. *See In re Enron Sec. Derivative & ERISA Litig.,* 196 F. Supp. 2d 1375 (J.P.M.L. 2002)(granting transfer in part to prevent inconsistent pretrial rulings, particularly with respect to questions of class certification). As mentioned, the first fourteen severed cases are nearly trial-ready and will likely serve as bellwether cases for the hundreds to come after. Section 1407 is the most efficient way to ensure that pretrial processes across all of these cases are uniformly litigated and adjudicated, thereby avoiding a situation where multiple courts reach contrary conclusions and subject litigants to conflicting responsibilities and obligations.

c.  **Transfer Will Reduce Litigation Costs and Conserve the Time and Effort of the Parties, Attorneys, Witnesses, and the Courts.**

Each of the Actions, and the many tag-along actions soon to follow, will benefit from having a single transferee judge address and adjudicate issues related to discovery and pretrial motion practice. Without transfer and consolidation, courts and lawyers may be briefing and deciding issues in several different district courts, witnesses may be called to depositions in numerous cases, and third parties may be called to produce documents and witnesses in several different cases.

B.  **The Southern District of New York Is The Most Appropriate Transferee Forum.**

The Southern District of New York and the Honorable Loretta A. Preska already have forty-five of the pending fifty-three actions as well as *Allen I*, the related injunctive class action. Judge Preska is uniquely positioned to tackle the procedural and organizational challenges of the multidistrict litigation as she has experience presiding over MDL and already a has vast store of

experience with the issues in the instant Actions. *See In re Merrill Lynch & Co. Auction Rate Sec. (ARS) Mktg. Litig.,* 626 F. Supp. 2d 1331, 1333 (J.P.M.L. 2009)("By centralizing this litigation before Judge Loretta A. Preska, we are assigning this docket to a seasoned jurist who has the experience necessary to steer this litigation on a prudent course.").

While DOCCS is headquartered in Albany, New York, in the Northern District of New York, all Assistant Attorney Generals who have appeared to date on behalf of State Defendants are located in the Manhattan Office located in the Southern District of New York. Manhattan is also the location of counsel for all of the Movants and the *Allen I* class. The only current counsel not located in Manhattan are the lawyers from Conway, Donovan and Manley PLLC (Albany, New York) who serve as certified outside counsel for defendant providers conflicted from State representation. For the past four years, the Conway, Donovan and Manley lawyers have ably defended their clients in *Allen I* from Albany with no great difficulty. The location of associated lawyers suggests consolidation in the Southern District of New York.

The *Allen I* litigation has also demonstrated the fairly easy travel of lawyers from all sides to the location of witnesses for depositions and/or appearances. Depositions in *Allen I* have been conducted in locations in all three districts: Manhattan, Newburgh, NY, Albany, NY, Syracuse, NY, Rochester, NY, and Middletown, NY and in many separate DOCCS' facilities across the State of New York as most plaintiffs remain in custody. The varied locations of depositions will continue regardless of the venue of the Actions.

Finally, given the DOCCS-wide nature of the actions and the interminable transfers of plaintiff/patients between DOCCS' facilities, the actual paper discovery comes from facilities located all over the State of New York in all three mentioned districts. There is no centralized nexus for discovery.

## IV. CONCLUSION

For the above-stated reasons, Movants respectfully request that the Panel transfer the Actions set forth in the attached Schedule and all subsequently filed tag-along cases for coordinated or consolidated pre-trial proceedings before the Honorable Loretta A. Preska in the United States District Court for the Southern District of New York.

Dated: August 27, 2023
      New York, New York

Respectfully submitted,

*/s/ AJ Agnew*
Amy Jane Agnew
**LAW OFFICE OF AMY JANE AGNEW, P.C.**
24 Fifth Avenue, Suite 1701
New York, New York 10011
(973) 600-1724
aj@ajagnew.com

*Counsel for Plaintiffs/Movants Robert Daniels, Todd Briglin, Daniel Herman, Richard Vasquez, Khalaire Allah, Steven Jacks, John Alston, Joseph Perez, Roderick Reyes, Brian Bernard, Kevin Crichlow, Wilbert Dunbar, Robert Feder, Elvio Feola, John Frateschi, Bryan Hale, Mali Wilkerson, Christopher VanGuilder, Kiaza Locenitt, Donald Madison, Benjamin Marcial, McKinley Miller, Gary Ortiz, Claudio Johnson, Richard Rivera, Alonzo Jacobs, Robert Oleman, Derrick Williams, Marcos Rivera, John Rosado, Peter Allen, Mark Daniels, Shannon Dickinson, Aaron Dockery, John Gradia, Angel Hernandez, Hugh Knight, Terry Mathis, Sean Pritchett, Rashid Rahman, Felipe Rivera-Cruz, Wayne Stewart, John Pine, Ronald Diggs, Kenneth Windley, Michael Lorandos, Jose Burgos, Jeffrey First, Hannah Jones, George Pivetz, and Larry Rau*