**BEFORE THE UNITED STATES JUDICIAL PANEL
ON MULTIDISTRICT LITIGATION**

| | | |
|---|---|---|
| **In re: New York Department of** | ) | **MDL No. 3086** |
| **Corrections and Community** | ) | |
| **Supervision Medications with Abuse** | ) | |
| **Potential Prisoner Litigation** | ) | |

**BRIEF IN OPPOSITION TO PLAINTIFFS' MOTION FOR TRANSFER OF
ACTIONS PURSUANT TO 28 U.S.C. 1407 FOR COORDINATED
OR CONSOLIDATED PRETRIAL PROCEEDINGS**

### PRELIMINARY STATEMENT

Defendants Lester Silver, Robert Bentivegna and Gaetan Zamilus submit this Memorandum of Law in Opposition to Plaintiffs' Motion to Transfer Actions Pursuant to 28 U.S.C. § 1407 for Coordinated or Consolidated Pretrial Proceedings.[1] Movants seek transfer of all pending actions listed in their appended Schedule of Actions (the "Actions") against medical providers and Regional Medial Directors currently and formerly employed by the New York State Department of Corrections and Community Supervision for alleged Eighth Amendment violations stemming from the implementation and promulgation of the now-rescinded Medications with Abuse Potential Policy which, as Plaintiffs tell it, discontinued effective pain medications without a medical justification.

Plaintiffs in each pending action are currently injunctive class members in the case of *Allen v. Koenigsmann, et al.* SDNY Case No. 19-cv-8173 (J. Preska) (hereinafter "*Allen I*") and were

---

[1] The undersigned appears on behalf of these defendants solely as to the following actions: Ortiz v. Dinello, et al. (S.D.N.Y. Case No. 1:23-cv-3547) and Miller v. Hammer, et al. (S.D.N.Y. Case No. 1:23-cv-3462)

former putative class members of the *Allen I* liability class.  Unfortunately for Plaintiffs, their Motion to Certify a liability class was denied for lack of standing.  Following this denial, Plaintiffs commenced individual liability actions for damages (based on the same incidents for which they seek injunctive relief) in the Southern, Northern and Western Districts of New York. Plaintiffs now attempt to consolidate the individual actions in the Southern District of New York before Judge Preska because the actions purportedly involve similar questions of fact, and because most of the actions are already before Judge Preska, who presides over *Allen I*.

The purpose of 28 USC § 1407(a) is to provide parties with a mechanism to consolidate pending cases with similar factual questions to promote the ends of efficient justice, and it is Plaintiffs' burden to establish that the statutory prerequisites for transfer are met. However, despite Plaintiffs' sweeping generalizations regarding the procedural landscape of *Allen I*, a more detailed analysis reveals they are unable to meet their burden to establish that consolidation is appropriate.

To the contrary, for the reasons more fully detailed herein, the unique circumstances and procedural posture presented in *Allen I* weigh heavily against consolidation because (i) all of the same counsel represent the parties in *Allen I*, as they do thus far in Plaintiffs' Schedule of Actions; (ii) the Actions are already on divergent timelines with more than one-quarter of the actions near trial, while the remainder are at their inception; (iii) efficiencies in the exchange of documents undertaken in *Allen I* have already been established through cooperation of the parties; (iv) all of the events underlying the individual Actions stem from specific incidents under the MWAP regime which took place between 2017 and 2021, and nearly all paper discovery surrounding this timeframe has already been produced and exchanged among the same counsel; and (v) all of the Regional Medical Directors, the creators and implementors of the MWAP Policy, have already

been deposed in *Allen I* and extensively questioned on the creation and implementation of the MWAP Policy between 2017 and 2021.

The caselaw cited below overwhelmingly supports that these facts and circumstances should support a finding against consolidation, and Plaintiffs' motion before the Panel must be denied with prejudice.

## **RELEVANT FACTUAL BACKGROUND AND PROCEDURAL HISTORY**

Background

In 2019, 18 incarcerated individuals in the New York State Department of Corrections and Community Supervision ("DOCCS") brought a putative class action alleging that a DOCCS medical policy addressing the prescription and administration of medications that have the potential of abuse—the Medications with Abuse Potential ("MWAP") policy—violated their Eighth Amendment rights against cruel and unusual punishment (*see Allen I*).  The MWAP policy required DOCCS' primary care providers to submit a request form to their assigned Regional Medical Director ("RMD") to obtain approval before prescribing certain medications they listed as having "abuse potential" (*see Allen I*, Dkt. No. 256 at ¶¶88-106).  MWAP was created with the goal of reducing the prescribing of medications with abuse potential in a correctional setting, and to encourage physicians to consider alternative treatments before prescribing such medications.  As a result of this policy, Plaintiffs alleged that many patients – each with variable and distinct medical pain conditions and diagnoses – were denied necessary medications to treat their chronic pain conditions by the RMDs, who did not meet with patients or review their medical records and, as Plaintiffs allege, always denied the requests regardless of the patients' individual circumstances.

In 2020, DOCCS, as part of an effort to resolve this matter, undertook two rounds of "individualized reassessments" of 70 patients, including the named Plaintiffs, to ensure Plaintiffs were properly prescribed medications that their providers determined, in an exercise of the providers' medical judgment, were necessary for the treatment of chronic pain conditions. Subsequently, DOCCS also rescinded the MWAP policy altogether, and replaced it with a new policy designed to eliminate the secondary RMD review about which Plaintiffs complained. Under Health Services Policy 1.24A, effective February 8, 2021, RMDs are no longer involved in the prescribing of medications in DOCCS facilities, leaving DOCCS medical providers free to make individual prescription decisions based on their medical judgment and the individualized circumstances of each patient. Notwithstanding, Plaintiffs have continued to allege that although the MWAP Policy itself was rescinded, its implementation – of allegedly unconstitutionally denying and discontinuing medications without a medical justification – continues on an ongoing basis (*see Allen I*, Dkt. No. 378, pp. 8-9).

<u>Representation</u>

Since its inception, the Office of the Attorney General represents each of the Regional Medical Directors and the Chief Medical Officer ("CMO") at the time, Dr. Morley, in his individual and official capacity for injunctive relief (collectively referred as the "State Represented Defendants" or "SRD").   Private counsel Ryan Manley, Esq. represents the remaining nine individually named Physicians and Nurses (collectively referred as the "Non-State Represented defendants" or "NSRD") in *Allen I*.

In April of 2022, following CMO Morley's resignation, by way of a letter, Plaintiffs substituted successor CMO Dr. Moores as the official capacity Defendant (*Allen I*,  Dkt. No. 341). After identifying representation concerns, the Office of the Attorney General certified Dr. Moores

for outside counsel and, on August 5, 2022, the undersigned private counsel appeared on her behalf (*Allen I*, Dkt. No. 397).[2]

Class Certification & Discovery

On May 19, 2022, following almost *three years* of pre-certification discovery, Plaintiffs filed their first Motion to Certify both a liability class pursuant to F.R.C.P. 23(b)(1)-(3) or (c)(4), and injunctive class pursuant to 23(b)(2)[3] (*see Allen I*, Dkt. Nos. 371, 373).  Plaintiffs argued that the MWAP policy "effected hundreds if not thousands of patients, some severely," necessitating a class to "remediate the constitutionally inadequate treatment of chronic pain in its patients" (*Id.*).

The pre-certification discovery preceding Plaintiffs' motion to certify class, as well as the discovery that continued subsequent thereto, was extensive. First, to date, the documents exchanged include: the MWAP Policy, over 10,000 pages of MWAP request forms, and internal memoranda and email correspondence regarding its promulgation and implementation.  It also includes *hundreds of thousands of pages of medical records* of ***over 500*** class members, including the named plaintiffs in the Schedule of Actions.[4]  Second, the ongoing production of medical records has taken place through a coordinated process between Plaintiffs' counsel and the State Represented Defendants whereby the Office of the Attorney General alerts Plaintiffs when each new set of documents becomes available (initially every 30 days, but over time, every 90 days). Plaintiffs' counsel then retrieves the documents in person so they may be scanned and bates-stamped, and then Plaintiffs produce those bates-numbered documents to all counsel in a timely manner (*see Allen I*, Dkt. No. 286). The parties agreed to this process because production from

---

[2]  We note, Dr. Moores still does not appear as a defendant on the Southern District court docket.

[3]  On May 20, 2022, Plaintiffs also belatedly moved for a preliminary injunction. After full briefing, the Court determined that questions of fact needed to be resolved and an evidentiary hearing took place in February 2023 to decide questions of fact regarding Dr. Moores' invocation of the Voluntary Cessation Doctrine. A preliminary injunction was entered on June 12, 2023, within the confines of the Prison Litigation Reform Act (*see Allen I*, Dkt. No. 602; *see also* 18 U.S.C. §3626).

[4]  For the lists of patient class members, *see Allen I*, Dkt. No. 713, pp. 12-28.

State Defendants stalled due to the pandemic and the need to turn the responsibilities of various DOCCS facility staff to emergent pandemic-related issues. This process has successfully continued for the entirety of the discovery phase. Third, amidst the voluminous exchange of documents (most of which predates the recession of MWAP in 2021), numerous pre-trial discovery rulings have already been made (*see Allen I*, Dkt. Nos. 159, 166, 172, 206, 227, 236, 241, 286, 298, 314, 320, 330, 342, 390, 409, 436, 464, 549, 682, 694, 714, 755). Finally, the depositions of each Regional Medical Director have all already taken place through *Allen I*, with extensive testimony about the genesis of the MWAP Policy and its implementation between 2015 and 2021.

Relevant Procedural Posture

On March 31, 2023, the district court granted Plaintiffs' motion to certify an injunctive class pursuant to F.R.C.P. 23(b)(2), but denied a liability class pursuant to F.R.C.P. 23(b)(1)-(3) and 23(c)(4), finding that Plaintiffs lacked standing because none of the plaintiffs (named, at the time, or absent) alleged to have been injured by all of the State and Non-State represented defendants (*Allen I*, Dkt. No. 553).

On July 18, 2023, in anticipation of an impending trial to determine the need for a permanent injunction, at Plaintiffs' request, the District Court ordered that named plaintiffs and individually named defendants be severed from the injunction class action (*Allen I*, Dkt. Nos. 593, 644). As of July 18, 2023, each of the originally named plaintiffs in *Allen I* are now continuing their respective cases with a new docket number, for damages. The Court-ordered severance included terms, in short, preserving the parties' rights, as well as current deadlines under *Allen I* (*see Allen I*, Dkt. No. 644). It further expressly ordered that all discovery exchanged in *Allen I* shall be treated as produced in each individual plaintiff case (*id.*). For the severed cases, discovery

concluded on September 15, 2023, and following a recent court conference, the court extended the dispositive motion deadline to November 15, 2023 (*see Allen I*, Dkt. No. 798).

Accordingly, the parties that remain in *Allen I* are Plaintiffs injunctive class representatives, on behalf of themselves and the injunctive class, and only defendant Dr. Moores, Chief Medical Officer, in her official capacity, for injunctive relief.  On September 5, 2023, a bench trial on the merits commenced before Judge Preska in the Southern District of New York to determine whether a permanent injunction would be entered, and on September 29, 2023, the parties submitted post-trial briefs.  To date, the parties await the District Court's determination on the merits.

In or about July of 2023, at least 39 putative class members (not including those severed) determined they would seek redress by commencing individual Eighth Amendment claims for damages against individual medical providers and RMDs for incidents that arose under the now extinct MWAP Policy.  Although most of the individual actions were commenced in the Southern District of New York solely because one RMD resides within the Southern District (while the remaining defendants in each case do not), some were venued in the Northern and Western Districts of New York.  On August 28, 2023, before any defendants even Answered or otherwise responded to the new Complaints, Plaintiffs moved, pursuant to 28 USC § 1407(a), before the Judicial Panel on Multidistrict Litigation, to transfer all of the actions to the Southern District for consolidated pretrial proceedings.

## ARGUMENT

### POINT I

### PLAINTIFFS' MOTION FOR TRANSFER SHOULD BE DENIED

Pursuant to 28 USC § 1407(a), the Judicial Panel on Multidistrict Litigation (the "Panel") may transfer civil actions for consolidated pretrial proceedings to any district where civil actions

involving one or more common questions of fact are pending in different districts. Congress indicated that the objective of § 1407 "is to provide centralized management under court supervision of pretrial proceedings of multidistrict litigation to assure the just and efficient conduct of such actions" (*Matter of New York City Mun. Securities Litigation*, 572 F.2d 49, 51 [2d Cir. 1978] [internal quotation marks and citations omitted). Before it authorizes a transfer, the Panel must determine that such a transfer "will be for the convenience of the parties and witnesses and will promote the just and efficient conduct of such actions" (28 U.S.C. § 1407[a]).

As such, the statutory requirements for transfer are: (1) the civil actions involve "one or more common questions of fact", that transfer will (2) "be for the convenience of parties and witnesses" and (3) "promote the just and efficient conduct of such actions" (28 USC § 1407[a]). The party moving for transfer has the burden of showing that the statutory requirements for transfer are met (*see In re Chiropractic Antitrust Litigation*, 483 F.Supp. 811 [JPML 1980]; *In re 21st Century Productions Inc. "Thrilsphere" Contract Litigation*, 448 F.Supp. 271 [JPML 1987]).

As set forth more fully below, Plaintiffs' motion must be denied because the facts and circumstances presented here weigh against consolidation. Accordingly, Plaintiffs failed to meet their burden of establishing the statutory requirements for transfer.

### A.   Consolidation will not Promote the Just and Efficient Conduct of the Actions

The single most important factor in the Panel's determination is whether consolidation will promote the just and efficient conduct of the Actions by eliminating duplicative discovery, avoiding the potential for inconsistent rulings on pretrial issues and schedules, and reducing the cost of litigation for all parties involved (*see* 28 U.S.C. §1407 [a]; *see also* S. Rep. No. 454, 90th Cong. 1st Sess. 2 [1967] ["the main purpose of transfer for consolidation or coordination of pretrial

proceedings is to promote the ends of efficient justice"]).  The facts presented here weigh against consolidation for the reasons below.

First, 14 out of the 53 actions were severed from *Allen I*.  In those 14 actions, discovery is now closed, and dispositive motions are forthcoming.  Centralization does not support the just or efficient nature of litigation where the Actions are at different procedural timelines (*see In re Texas Prison Conditions-of-Confinement Litigation*, 52 F.Supp.3d 1379 [JPML 2014]).  For this reason alone, transfer would not serve the purpose of §1407 because 26% of the actions are near trial, while the remaining actions in were only recently commenced[5] (*see* Moore's Federal Practice – Civil §112.04, p. 7 ["the Panel will refuse to transfer cases if the actions are nearing trial in the transferor forum or if discovery is already well along"]).

Second, the counsel that have appeared thus far before the Panel are the same counsel that represent the parties in *Allen I*.  Centralization is inappropriate where the plaintiffs are all represented by the same counsel and similar defense counsel is involved (*In re Texas Prison Conditions-of-Confinement Litigation*, 52 F.Supp.3d.; *In re Comcast Corp. Employee Wage and Hour Employment Practices Litigation*, 190 F.Supp.3d 1344 [JPML 2016] [denying centralization where the parties were represented by common counsel]).

Third, the parties have already achieved efficient judicial administration as evidenced by the discovery that has already been exchanged in *Allen I*.  Plaintiffs' description of the documents *already disclosed* necessarily establishes that little to no further paper discovery will need to be exchanged between the parties, namely: 10,000+ MWAP forms; memos, audits and emails

---

[5] Plaintiffs' anticipation of hundreds of more tag-along cases is irrelevant to whether centralization should be granted (*see In re Intuitive Surgical Inc. Da Vinci Robotic Surgical System Products Liability Litigation*, 833 F.Supp2d 1339 [JPML 2012] [considering only the cases pending, not the potential for "hundreds of case"]; *In re Lipitor (Atorvastatin Calcium) Marketing Sales Practices and Products Liability Litigation*, 959 F.Supp.2d 1375 [JPML 2013] ["[a]lthough plaintiffs suggest that the number of Lipitor cases is likely to expand considerably, we are disinclined to take into account the mere possibility of future filings in our centralization calculus"]).

demonstrating the development and implementation of MWAP; and each patient's individual medical records, and email correspondence regarding that patient. Moreover, since commencement of discovery in *Allen I*, all of the medical records of each putative class member were produced on a rolling basis. Plaintiffs coordinated with State represented defendants to establish a system to efficiently exchange, bate stamp, scan and distribute to all counsel of record. Thus, consolidation would not prevent duplication of, or repeated discovery, since all the same counsel as *Allen I* are already in possession of most of the discovery for their respective actions. The overwhelming majority of paper discovery already exchanged, and efficiencies *already created and executed by the parties*, unequivocally demonstrate that consolidation is inappropriate.

Moreover, with paper discovery significantly advanced, depositions will likely require the most cooperation and coordination among the parties since many of the defendant providers have been named in several actions. However, based on the history of *Allen I,* there is no reason the parties should not be able to voluntarily coordinate deposition efforts among themselves. Notably, "centralization under Section 1407 should be the last solution after considered review of all other options" (*In re Express Courier International, Inc., FLSA Wage and Hour Litigation*, 326 F.Supp.3d 1376 [JPML 2018]). Where a minimal number of courts are involved, particularly those in adjacent districts, voluntary cooperation and coordination between both the parties and district courts is a sufficient alternative to centralization (s*ee In re Alteryx, Inc., Customer Data Security Breach Litigation*, 291 F.Supp.3d 1377 [JPML 2018] ["cooperation among the few involved courts and counsel appears to be a workable alternative to centralization"]; *In re Comcast Corp. Employee Wage and Hour Employment Practices Litigation*, 190 F.Supp.3d at 1345 [denying centralization where "the actions are pending before three judges in adjacent districts and the parties are

represented by common counsel"]; *In re Westinghouse Elec. Corp. Employment Discrimination Litigation*, 438 F.Supp 937 [1977]).

For all of these reasons, consolidation is inappropriate as it will not achieve the intended goal of just and efficient coordination of pretrial proceedings.

### B. Plaintiff-Specific Factual Issues Preclude Centralization

The next fundamental statutory requirement for transfer of pending cases to a centralized forum is that they involve one or more common questions of fact (*see* 28 U.S.C. §1407 [a]; *In re "Factor VIII or IX Concentrate Blood Prods." Prods. Liab. Litig.*, 853 F. Supp. 454, 455 [JPML 1993]).  Plaintiffs' assertion that the Actions share common questions of fact necessitating centralization is incorrect. In short, Plaintiffs state that because each complaint makes near identical allegations regarding the MWAP Policy, it necessarily equates to common questions of fact to be decided by the Court (*see* JPML Dkt. No. 1-1, p. 5 ["Pltfs. Br."]).  Indeed, approximately 285 paragraphs of each complaint in Plaintiffs' Schedule contain nearly verbatim allegations regarding the history, development and implementation of the MWAP Policy.  However, at its core, the material issues to be decided by the court will have to be determined by the medical circumstances of each specific plaintiff.  Where litigation will focus on plaintiff-specific factual issues, centralization is inappropriate (*In re Air Crash at Durango, Mexico on July 31, 2018*, 359 F.Supp.3d 1384 [JPML 2019] [denying centralization where "discovery and other pretrial matters will likely focus on plaintiff-specific matters"]; *In re Intuitive Surgical Inc. Da Vinci Robotic Surgical System Products Liability Litigation*, 833 F.Supp2d 1339 [JPML 2012]; *In re Blair Corp. Chenille Robe Products Liability Litigation*, 703 F.Supp.2d 1379 [JPML 2010] [denying centralization where proponents of motion failed to demonstrate that individual issues of fact concerning each plaintiff's injuries warranted centralization]; *In re Linear Gadolinium-Based*

*Contrast Agents Products Liability Litigation*, 341 F.Supp.3d 1381 [2018] [denying centralization where issues alleged are "highly plaintiff-specific"]).[6]

Here, the actions allege that the 53 Plaintiffs suffered from nearly one-hundred different medical conditions, including, but not limited to: diabetes, diabetic neuropathy, carpal tunnel syndrome, degenerative disc disease, migraines, congestive heart failure, fibromyalgia, sickle cell anemia, arthritis, osteoarthritis, spinal injuries, cancer, hypertension, joint disease, asthma, sciatica, multiple sclerosis, Hepatitis, and HIV/AIDS. The actions also allege the use, discontinuation and/or denial of several different type of medication, including, but not limited to: Gabapentin, Percocet, Flexeril, Tramadol, Elavil, Cymbalta, Lyrica, OxyContin, Ultram, Neurontin, Morphine, Baclofen, Robaxin. The question of whether prescribing (or not prescribing) a particular medication, for a specific ailment, for each plaintiff; the effect that any alternative treatment had on their condition; and whether the drug at issue was an "effective medication" will require an individualized expert evaluation for each plaintiff thereby diminishing any potential efficiencies from centralization. In *In re Repetitive Stress Injury Litig.*, the Court determined that where the only common questions of fact are so general that it encompasses many different ailments with numerous possible causes, transfer is inappropriate (11 F.3d 368, 373 [2d Cir. 1993]). Applicable here, the common questions relating to the MWAP policy are too general to warrant transfer because they encompass the dozens of ailments listed above, with numerous causes (if any) to the worsening of each Plaintiff's condition.

---

[6] The cases cited by plaintiffs to support consolidation on the basis of common factual questions do not apply in this case. (Pltfs. Br., pp. 6-7). *In re Nat'l Prescription Opiate Litig.* involved political subdivisions alleging improper marketing and distribution of prescription opiates in those cities, counties, and states, unlike here where the material questions involve a specific individuals use of a prescription medication. Additionally, both *In re Cook Medical Inc.* and *In re Wright* are both products liability that involve design, manufacturing, testing and marketing of medical devices, and do not challenge the decision making of any medical providers or care given to specific plaintiffs.

The matters presented here are similar to those in *In re Texas Prison Conditions-of-Confinement Litigation*, which involved Eighth and Fourteenth Amendment conditions of confinement claims against various prison officials stemming from a statewide policy within the Texas Department of Criminal Justice (52 F.Supp.3d 1379 [JPML 204]).  While the Panel noted that "the actions share certain factual issues regarding, *inter alia*, defendants' policies and practices with respect to inmate housing conditions during periods of high heat", the Panel determined that centralization was not appropriate because the actions each involved a "unique inmate who was incarcerated at a unique facility and whose death necessarily occurred in unique circumstances" (*id*. at 1380).

Similarly, the Panel found against centralization in *In re Florida Dept. of Corrections Sexual Harassment by Inmates Litigation* (657 F.Supp.2d 1369, 1370 [JPML 2009]). In that case, the plaintiffs were current or former employees of the Florida Department of Corrections who alleged that they were subjected to harassment by male inmates at various correctional facilities throughout the state (*id.* at 1370). While the Panel acknowledged the facial similarity between the various plaintiffs' legal allegations, the Panel ultimately found against centralization:

> With that said, however, the alleged harassment occurred at different times and at more than a dozen institutions scarred throughout the state. The resolution of plaintiffs' claims is likely to turn on highly individualized inquiries regarding, *inter alia*, the nature and degree of inmate misconduct to which each plaintiff was exposed, the reporting of that misconduct to DOC personnel at the involved institution, the responsive measures undertaken (or not undertaken) by those personnel, and the measure of each plaintiff's alleged damages.

Here, like in *Texas Prison Conditions-of-Confinement Litigation* and *Florida Dept. of Corrections Sexual Harassment by Inmates Litigation*, although there may be facial similarities between the allegations alleged in the complaints specific to the genesis and implementation of the

MWAP policy itself, plaintiff-specific issues will predominate discovery questions to be determined by the Court, and thus preclude centralization. Plaintiffs even acknowledge the Actions "allege a variety of injuries, causation (in the form of which medications were discontinued or denied), timing, severity and duration of each patient's injuries" (Pltfs. Br., p. 6).  Despite Plaintiffs' attempts to draw similarities between the pending actions to support their position that consolidation is appropriate, the sheer number of different medical maladies and drugs at issue clearly demonstrate that individual issues relating to each Plaintiff's unique medical history, medical evaluations, and treatment history, including whether the individual plaintiff needed the medication at issue based on their unique medical needs.

For these reasons, the highly complex and individualized nature of the material issues of fact to be decided by the court weight against consolidation.

### C.       The Convenience of the Parties is not Served by Consolidation, and, in any event, Consolidation before the Southern District of New York is not the Appropriate Venue

Plaintiffs next argue that transfer will serve the convenience of the parties and witnesses; it will not.  For the reasons detailed above, there is little to be gained by consolidation due to the unique circumstances presented in this case.  Namely, the overwhelming document discovery (and court rulings in connection thereto) that has already taken place – the same discovery needed for each individual Action that is already possession of all counsel from *Allen I*, who have also appeared on behalf of the parties herein.   As such, because time and effort has already been considerably saved, any argument that transfer is necessary to conserve such resources is moot.

Moreover, Plaintiffs mistakenly only highlight the convenience of counsel in evaluating that the Southern District is, in their view, the appropriate venue (Pltfs. Br., p. 11).  However, the Panel must look to the collective convenience of all parties and witnesses, rather than looking to each individual convenience of each party and each witness (*In Re Antibiotic Antitrust* Actions,

333 F.Supp. 299, 304 [S.D.N.Y. 1971] [construing 28 U.S.C. 1404[a], which contains the same language as multidistrict litigation statute]).  To the extent the Panel determines that consolidation is appropriate, the Southern District is <u>not</u> the proper venue.  The statutory framework provides no guidance for deciding which court to transfer cases to, however, some of the factors considered by the Panel when deciding the appropriate transferee forum is the parties' principal place of business; the location of documents and witnesses necessary to the actions; and the centrality of the location for the convenience of the parties and witnesses (28 U.S.C. §1407[a]; *see Moore's Federal Practice – Civil* §112.04, p. 11 [2023]).

Here, DOCCS' Central Office is located in Albany, New York, within the Northern District, and an overwhelming majority of the parties reside in the Northern District.  Plaintiffs position that the "location of two RMDS in the Southern District of New York has commanded the venue of the great bulk" of the actions to be filed before the Southern District is not accurate when viewing the location of all parties on a global scale.  (Pltfs. Br., p. 8).  Rather, a review and analysis of the Summons' docketed on Plaintiffs' Schedule of Actions illustrates a total of 41 Defendants collectively reside in the Northern and Western Districts (26 and 13, respectively), as compared to 23 defendants that reside in the Southern District.  Moreover, the Panel will consider the condition of the potential transferee forum's docket; a crowded docket may not be efficient to transfer cases (*In Re San Juan, Puerto Rico Air Crash Disaster*, 316 F.Supp.981, 982, n.3 [JPML 1970]).  Here, the Southern District docket is ***significantly*** more crowded than the Northern District.  A review of the U.S. District Court Judicial Caseload Profile illustrates that, as of June 30, 2023, the total number of cases pending in the Southern District is 17,541, as compared to the

Northern District which has a total of 2,447 (*see United States Courts, Statistics & Reports, Combined Civil and Criminal Federal Court Management Statistics* [June 30, 2023]).[7]

Further, as Plaintiffs note, the depositions in *Allen I* have been conducted in all three districts with the cooperation of all counsel, and it is anticipated that varied locations of depositions will continue regardless of venue outcomes.  Moreover, the four separate counsel that have entered Appearances to date in the Plaintiffs Schedule —the same counsel in *Allen I*— include two law firms located in Albany, New York, (the undersigned, and Conway, Donovan & Manley, PLLC), and two in New York City (Plaintiffs, and the Office of the Attorney General).  As the Albany attorneys ably traveled approximately 150 miles each way to New York City for appearances and depositions in *Allen I*, it is not unreasonable to expect the New York City counsel to ably travel to Albany, New York for court appearances and/or depositions.  Viewing all of the above factors together, convenience clearly favors the Northern District as the appropriate venue.

Finally, although Judge Preska currently presides over the *Allen I* injunction class action in the Southern District, Judge Sannes in the Northern District is also familiar with the facts and circumstances in this case because she presides over the related matter of *Salvana v. DOCCS*, cited in every complaint in Plaintiffs' schedule of actions (N.D.N.Y. Case No. 5:21-cv-00735). Judge Preska has acknowledged that there is a benefit to having lawsuits that raise similar issues be examined by more than one judge because "development of the law is better served by having different judges decide those cases, so that the court of appeals has the benefit of different Judges' thinking about the same issues" (*see* N. Y. Times, B. Weiser, *Federal Court Alters Rules on Judge Assignments*. [2013]).[8]

---

[7] https://www.uscourts.gov/sites/default/files/data_tables/fcms_na_distprofile0630.2023.pdf, (*see* pp. 9, 11)
[8] https://www.nytimes.com/2013/12/24/nyregion/federal-court-alters-rules-on-judge-assignments.html

## **CONCLUSION**

Based on the foregoing, Defendants respectfully requests that this Panel deny Plaintiffs' motion for transfer in its entirety.

Dated: October 11, 2023
      Albany, New York

WHITEMAN OSTERMAN & HANNA LLP


BY:     *s/Oriana Kiley*

       Oriana Kiley, Esq.
       *Attorney for Defendants Lester Silver, Robert*
       *Bentivegna and Gaetan Zamilus*
       One Commerce Plaza
       Albany, New York 12260
       Telephone: (518) 487-7600
       okiley@woh.com